JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

TRACIE L. BROWN (CSBN 184339)
LARA M. KROOP (CSBN 239512)
Special Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, CA 94102
   Telephone: (415) 436-7200
   Facsimile:  (415) 436-7234
   E-mail: Tracie.Brown@usdoj.gov
           Lara.Kroop2@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0272 SI |
| Plaintiff, | **GOVERNMENT'S SUPPLEMENTAL RULE 16 NOTICE OF EXPERT TESTIMONY** |
| v. | |
| CELSO MARTEARENA-ARRIOLA, | Trial Date:     June 30, 2008<br>Pretrial Conf.:  June 24, 2008 |
| Defendant. | |

     Pursuant to Rule 16(a)(1)(G), the government here supplements its previously-filed Notice of Expert Testimony relating to the proposed testimony of Kenneth Woods, Senior Fingerprint Specialist with the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement (ICE), at the Forensic Document Laboratory (FDL) in McLean, Virginia.

**I.    BACKGROUND.**

     The FDL is accredited by the American Society of Crime Laboratory Directors / Laboratory Accreditation Board (ASCLD/LAB). As a Senior Fingerprint Specialist at the FDL, Mr. Woods' duties and responsibilities include, but are not limited to, processing evidence

collected at crime scenes, conducting friction ridge analysis, comparison, and evaluation of fingerprints submitted for analysis to the Forensic Document Laboratory, as well as entering fingerprints into the FBI's IAFIS (Integrated Automated Fingerprint Identification System) system and ICE's CAFIS (Cogent Automated Fingerprint Identification System).  Mr. Woods has the education, training, and experience required to conduct such analysis, as outlined in the previously-provided curriculum vitae.

On April 22, 2008, Mr. Woods analyzed the eight (8) Exhibits containing inked or known impressions, submitted by ICE Deportation Officer Cesar J. Lopez to the FDL.  The Exhibits consisted of five Warrants of Removal/Deportation (Form I-205), and three (3) standard fingerprint cards (Form FD-249), and are described in more detail on the report dated April 22, 2008 (attached as Exhibit A to Defendant's Motion to Exclude).  After an analysis, comparison and evaluation of the friction ridge detail on the items, Mr. Woods determined that all of the fingerprint impressions were made by the same individual.

## II.     BASIS FOR OPINION.

### A.     Methodology.

Mr. Woods' opinion that all of the fingerprint impressions were made by the same individual is based on the two fundamental principles of friction ridge identification: (1) friction ridges present in fingerprints begin to develop in the fetus and persist, unchanged, until after death when decomposition destroys the ridged skin; (2) no two fingerprints have been found to be the same, even in identical twins.  His conclusions were reached using the standard ACE-V (Analysis, Comparison, Evaluation – Verification) methodology.  The methodology is further broken down as follows:

The Analysis phase is used to make observations and to study each of the impressions. This includes how the impression was processed or made; whether it was an inked or a live scanned impression; the surface it was deposited on; the general flow of ridges; clarity of the ridges; ridge characteristics present; and any apparent movement or distortion.  The examiner then determines if the impression contains sufficient information to move on to the comparison phase.  The impressions submitted were determined to be sufficient for comparison.

The Comparison phase begins when two or more impressions have been determined to be of value for comparison. The impressions are compared in a side by side format to determine if the same ridge formations and ridge characteristics occupy the same relative position in both. Additionally, the impressions are compared for unexplainable dissimilarities. If the impressions meet the comparison criteria then the Evaluation phase is initiated. Mr. Woods compared the impressions submitted by Deportation Officer Cesar Lopez, and found the ridge formations and characteristics to be in the same relative position with no unexplainable dissimilarities.

The Evaluation phase is where the examiner makes a determination as to the individualization, exclusion, or inconclusive status of the examination. Any individualizations are then sent to an additional examiner for verification. As previously stated, Mr. Woods determined that the fingerprint impressions submitted to him were made by the same individual; the impressions were then forwarded to Senior Fingerprint Specialist Genius Johnson for verification.

In the Verification phase a second examiner is responsible for following the ACE methodology as outlined above in order to provide a quality assurance measure. Senior Fingerprint Specialist Johnson verified the examination and concurred with Mr. Woods' conclusion that all fingerprints were made by the same person.

**B.     Findings.**

As stated above, Mr. Woods analyzed the eight (8) exhibits containing inked or known impressions, submitted by ICE Deportation Officer Lopez to the FDL. Attached hereto as Exhibit A is a chart that is a pictorial representation of the comparison between the known impressions on Exhibits 1.4 (I-205 Warrant of Deportation dated 11/14/95) and 1.6 (FDL-249 Fingerprint Card dated 4/7/08). *See* Exhibit A.

Exhibit 1.4 bears a known fingerprint impression that is of good to moderate quality for comparison. The pattern and ridge flow are discernable as a right sloping loop. The core area and many of the ridges and ridge details are very clear. Some areas are smudged or unclear due to conditions at the time the impression was taken.

Exhibit 1.6 bears several known impressions that are of good to very good quality for

comparison. The impression in the block marked 1.R. THUMB is consistent in pattern and ridge flow with the right sloping loop in Exhibit 1.4. The ridges and ridge details are very clear, and while the ridges do fade around the outer edges of the impression, this does not interfere with the analysis.

Due to the level of ridge clarity and detail, both of the known impressions in Exhibits 1.4 and 1.6 were determined to be of sufficient quality for comparison.

A side by side comparison was conducted to determine if the known impressions were made by the same finger. There is specific agreement between the impressions as to pattern and ridge flow. Upon comparing the individual ridges present in the impressions, several areas displayed ridge characteristics that are in the same unit relationship between the two impressions. These areas of agreement are represented in the chart and occur throughout the impressions. The first area (the lowest set of small circles) is to the left side of the impressions near the delta area. The enlarged area displays an ending ridge and a bifurcation. The second set of circles highlight the ridge to the left of the core. The ridge contains four bifurcations presented as two enclosures. The third set of circles display the top of the core and a bifurcation opening up and to the right in both impressions. The top set of circles are representative of an ending ridge and a downward opening bifurcation that are above the core. The selected ridge details described are a representative sample of the ridges and ridge details on which Mr. Woods' ultimate conclusion was based.

The evaluation of the impressions described above resulted in the determination that both of the impressions were made by the same individual. While the areas recorded on the remaining impressions – Exhibits 1.1 (I-205 Warrant of Removal/Deportation dated 4/27/05), 1.2 (I-205 Warrant of Removal/Deportation dated 6/21/01), 1.3 (I-205 Warrant of Removal/Deportation dated 8/7/98), 1.5 (I-205 Warrant of Deportation dated 11/29/94), 1.7 (FD-249 Fingerprint Card dated 2/20/01), and 1.8 (FD-249 Fingerprint Card dated 11/14/95) – are in some cases different fingers, the same procedure or methodology was followed in the Analysis, Comparison, and Evaluation of these Exhibits. All impressions contained areas of sufficient clarity and ridge detail to allow the ACE methodology to be followed. Exhibits 1.1, 1.2, and 1.3 all contain right

index fingerprint impressions. The pattern, ridge flow, and ridge characteristics on those impressions are consistent with each other, and consistent with the right index fingerprints contained on Exhibits 1.6, 1.7, and 1.8. For example, below the core of the impressions there is a bifurcation present that opens to the left, travels a short distance and merges or joins the ridge above. Two ridges below the first bifurcation is a second bifurcation that also opens to the left.

Likewise, the right thumbprint contained on Exhibit 1.5 is consistent with the pattern, ridge flow, and ridge characteristics on the right thumbprints contained on Exhibits 1.4, 1.6, 1.7, and 1.8. For example, the previously mentioned core, with the bifurcation that opens to the right in the ridge immediately above the core, is present in all of the right thumb impressions. Additionally the double enclosure in the ridge to the left of the core is also present in all of the right thumb impressions.

Thus, based on these and other consistencies (as well as the corresponding lack of unexplainable inconsistencies) among the fingerprint impressions, Mr. Woods concluded (and Mr. Johnson verified) that all of the impressions were made by one and the same individual.

DATED: June 20, 2008                               Respectfully submitted,

                                                   JOSEPH P. RUSSONIELLO
                                                   United States Attorney


                                                   _____/s/_____
                                                   TRACIE L. BROWN
                                                   Assistant United States Attorney

# EXHIBIT A





FDL  08-04491