JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TRACIE L. BROWN (CABN 184339)
Assistant United States Attorney
LARA M. KROOP (CABN 239512)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    E-mail: Tracie.Brown@usdoj.gov; LaraKroop2@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>  v. )<br>)<br>CELSO MARTEARENA-ARRIOLA, )<br>)<br>    Defendant. )<br>_____ ) | No. CR 08-0272 SI<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY<br><br>Trial Date: June 30, 2008 8:30 a.m.<br>Pretrial Conference: June 24, 2008; 3:30 p.m |

**INTRODUCTION**

The government filed its Notice of Expert Testimony on June 13, 2008. The Defendant objected on the grounds that it was insufficiently detailed. Without agreeing with that position, the government immediately informed the Defendant that it would supplement the Notice Concurrently with this filing, the government does so. *See* Exhibit 1 (Supplemental Expert Notice, filed June 20, 2008).

In addition to being premature, the Defendant's Motion to Exclude also founders on the applicable law and facts.

**ARGUMENT**

**I.      The Expert Disclosure Is Sufficient.**

The June 13 Notice of Expert Testimony referenced the expert's previously-produced report (CMA0421; Defendant's Exhibit A), which listed – by exact title and date – eight sets of fingerprints that the expert had analyzed. *See* Defendant's Exhibit A (listing, *e.g.*, "I-205, Warrant of Removal/Deportation for MARTEARENA-ARRIOLA, CELSO, A#91 761 305, executed on 4-27-05, with a fingerprint impression thereon.").[1] The report stated the expert's conclusion that all eight sets of fingerprints were made by the same individual, and the basis for that conclusion – i.e., the expert's "comparative analysis of the friction ridge detail for the fingerprint impressions in question."

The June 13 Notice further explained that his opinion that all prints were made by the same individual was based on certain fundamental principles of fingerprints (that they are unique and immutable), and his implementation of "the standard ACE-V (Analysis, Comparison, Evaluation - Verification) methodology." Defendant's Exhibit B at 2:11-17.

In response to the Defendant's contention that the notice was insufficiently detailed, the government immediately stated that it would supplement the original report, and has now done so. The Supplemental Expert Notice:

- Explains the standard ACE-V methodology in detail;
- Includes a chart that graphically demonstrates the basis for the expert's opinion as to two of the eight sets of fingerprints;
- Provides detailed bases and underlying analysis for the expert's opinion as to the unique and consistent characteristics on the eight sets of fingerprints; and

---

[1] This refutes the Defendant's claim that the expert report fails to "contain a description of the various fingerprints." Motion to Exclude at 3:5-6. The above-described 4-27-05 Warrant of Removal/Deportation – which was provided to the Defendant in discovery – contains exactly one fingerprint, described as a right index fingerprint. The Defendant has received in discovery copies of all prints analyzed by the expert, and indeed reviewed the original fingerprint impressions at the U.S. Attorney's Office.

UNITED STATES' OPP. TO MTN. TO EXCLUDE
CR 08-0272 SI

2

1  • Sets forth the expert's opinion that there were no unexplainable
2  inconsistencies that undermined his opinion that the same person made all
3  eight sets of prints.
4  *See* Exhibit 1.
5  If the purpose of Rule 16(a)(1)(G) is "to minimize surprise that often results from
6  unexpected expert testimony," to obviate continuances, and to provide the opponent with a "fair
7  opportunity" for cross-examination, *see* Fed. R. Cr. P. 16, Advisory Committee Notes to 1993
8  Amendment, the government's supplemented expert disclosure has certainly accomplished that.
9  Furthermore, in light of the experience of the Defendant's counsel, and the fact that analysis of
10 known fingerprints has been a reliable and established science for "roughly a hundred years," the
11 Defendant can hardly claim either an inability to conduct a competent cross-examination or
12 unfair surprise from unexpected testimony.  *See United States v. Calderon-Segura,* 512 F.3d
13 1104, 1109 (9th Cir. 2008) (reliability and admissibility of inked – as opposed to latent –
14 fingerprint analysis is "long established"; fingerprint identification methods "have been tested in
15 the adversarial system for roughly a hundred years") (citing *United States v. Crisp,* 324 F.3d 261,
16 266 (4th Cir. 2003)).
17 In short, the Defendant cites no authority interpreting Rule 16(a)(1)(G) to require what
18 they appear to seek here – essentially a direct examination "script" for the government's expert.
19 The government has complied with Rule 16(a)(1)(G), and the Defendant's motion should be
20 denied.
21 **II.    Even If the Expert Disclosure Were Insufficient, Exclusion Would Not Be the
            Appropriate Remedy.**
22
23 Even if the government's fulsome expert disclosure did fail to comply with Rule 16, "[a]
24 violation of Rule 16 does not itself require . . . exclusion of the affected testimony." *United*
25 *States v. Mendoza-Paz*, 286 F.3d 1104, 1111 (9th Cir. 2002).  In *Mendoza-Paz*, the defendant
26 claimed that the government had failed to provide sufficient expert notices under Rule 16.  One
27 government expert notice consisted of a "two-page letter designating the expert and summarizing
28 the scope and bases for his testimony." *Id.* at 1108.  In response to the defendant's assertions of

UNITED STATES' OPP. TO MTN. TO EXCLUDE
CR 08-0272 SI

3

1  inadequacy, the district court ordered the government to supplement its disclosures (requiring
2  one expert to produce reports on which he relied in rendering his opinion as to the value of
3  imported marijuana, and requiring an expert chemist to provide the underlying tests he had
4  conducted on the narcotics) – which the government did, as late as the first day of trial. *Id.* at
5  1108. The district court found that the supplemented disclosures were sufficient, and the Ninth
6  Circuit affirmed, finding that "the government's disclosures in fact provided Mendoza-Paz 'with
7  a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'"
8  *Id.* at 1111 (quoting Fed. R. Crim. P. 16, 1993 Advisory Committee Note).
9      Accordingly, even if the government's expert disclosure regarding the fingerprints
10 analysis were insufficient under Rule 16, the appropriate remedy would be to order
11 supplementation of that disclosure, not exclusion of the testimony.

## CONCLUSION

13     For the foregoing reasons, the Government respectfully requests that the Defendant's
14 Motion to Exclude be denied.

16 DATED: June 20, 2008                       Respectfully submitted,
17                                                   JOSEPH P. RUSSONIELLO
                                                  United States Attorney

19                                        /s/
                                       TRACIE L. BROWN
20                                        Assistant United States Attorney

# EXHIBIT 1

1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  TRACIE L. BROWN (CSBN 184339)
   LARA M. KROOP (CSBN 239512)
5  Special Assistant United States Attorney

6  450 Golden Gate Avenue, Box 36055
   San Francisco, CA 94102
7  Telephone: (415) 436-7200
   Facsimile:  (415) 436-7234
8  E-mail: Tracie.Brown@usdoj.gov
           Lara.Kroop2@usdoj.gov
9

10 Attorneys for Plaintiff

11
                      UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13
                         SAN FRANCISCO DIVISION
14

15 UNITED STATES OF AMERICA,        )   No. CR 08-0272 SI
                                    )
16     Plaintiff,                   )   **GOVERNMENT'S SUPPLEMENTAL**
                                    )   **RULE 16 NOTICE OF EXPERT**
17     v.                           )   **TESTIMONY**
                                    )
18 CELSO MARTEARENA-ARRIOLA,        )   Trial Date:     June 30, 2008
                                    )   Pretrial Conf.: June 24, 2008
19     Defendant.                   )
                                    )
20

21      Pursuant to Rule 16(a)(1)(G), the government here supplements its previously-filed

22 Notice of Expert Testimony relating to the proposed testimony of Kenneth Woods, Senior

23 Fingerprint Specialist with the U.S. Department of Homeland Security, U.S. Immigration and

24 Customs Enforcement (ICE), at the Forensic Document Laboratory (FDL) in McLean, Virginia.

25 **I.    BACKGROUND.**

26      The FDL is accredited by the American Society of Crime Laboratory Directors /

27 Laboratory Accreditation Board (ASCLD/LAB).  As a Senior Fingerprint Specialist at the FDL,

28 Mr. Woods' duties and responsibilities include, but are not limited to, processing evidence

GOVT'S SUPP. EXPERT NOTICE
CR 08-0272 SI

collected at crime scenes, conducting friction ridge analysis, comparison, and evaluation of fingerprints submitted for analysis to the Forensic Document Laboratory, as well as entering fingerprints into the FBI's IAFIS (Integrated Automated Fingerprint Identification System) system and ICE's CAFIS (Cogent Automated Fingerprint Identification System).  Mr. Woods has the education, training, and experience required to conduct such analysis, as outlined in the previously-provided curriculum vitae.

On April 22, 2008, Mr. Woods analyzed the eight (8) Exhibits containing inked or known impressions, submitted by ICE Deportation Officer Cesar J. Lopez to the FDL.  The Exhibits consisted of five Warrants of Removal/Deportation (Form I-205), and three (3) standard fingerprint cards (Form FD-249), and are described in more detail on the report dated April 22, 2008 (attached as Exhibit A to Defendant's Motion to Exclude).  After an analysis, comparison and evaluation of the friction ridge detail on the items, Mr. Woods determined that all of the fingerprint impressions were made by the same individual.

**II.     BASIS FOR OPINION.**

   **A.     Methodology.**

Mr. Woods' opinion that all of the fingerprint impressions were made by the same individual is based on the two fundamental principles of friction ridge identification: (1) friction ridges present in fingerprints begin to develop in the fetus and persist, unchanged, until after death when decomposition destroys the ridged skin; (2) no two fingerprints have been found to be the same, even in identical twins.  His conclusions were reached using the standard ACE-V (Analysis, Comparison, Evaluation – Verification) methodology.  The methodology is further broken down as follows:

The Analysis phase is used to make observations and to study each of the impressions. This includes how the impression was processed or made; whether it was an inked or a live scanned impression; the surface it was deposited on; the general flow of ridges; clarity of the ridges; ridge characteristics present; and any apparent movement or distortion.  The examiner then determines if the impression contains sufficient information to move on to the comparison phase.  The impressions submitted were determined to be sufficient for comparison.

The Comparison phase begins when two or more impressions have been determined to be of value for comparison. The impressions are compared in a side by side format to determine if the same ridge formations and ridge characteristics occupy the same relative position in both. Additionally, the impressions are compared for unexplainable dissimilarities. If the impressions meet the comparison criteria then the Evaluation phase is initiated. Mr. Woods compared the impressions submitted by Deportation Officer Cesar Lopez, and found the ridge formations and characteristics to be in the same relative position with no unexplainable dissimilarities.

The Evaluation phase is where the examiner makes a determination as to the individualization, exclusion, or inconclusive status of the examination. Any individualizations are then sent to an additional examiner for verification. As previously stated, Mr. Woods determined that the fingerprint impressions submitted to him were made by the same individual; the impressions were then forwarded to Senior Fingerprint Specialist Genius Johnson for verification.

In the Verification phase a second examiner is responsible for following the ACE methodology as outlined above in order to provide a quality assurance measure. Senior Fingerprint Specialist Johnson verified the examination and concurred with Mr. Woods' conclusion that all fingerprints were made by the same person.

**B.    Findings.**

As stated above, Mr. Woods analyzed the eight (8) exhibits containing inked or known impressions, submitted by ICE Deportation Officer Lopez to the FDL. Attached hereto as Exhibit A is a chart that is a pictorial representation of the comparison between the known impressions on Exhibits 1.4 (I-205 Warrant of Deportation dated 11/14/95) and 1.6 (FDL-249 Fingerprint Card dated 4/7/08). *See* Exhibit A.

Exhibit 1.4 bears a known fingerprint impression that is of good to moderate quality for comparison. The pattern and ridge flow are discernable as a right sloping loop. The core area and many of the ridges and ridge details are very clear. Some areas are smudged or unclear due to conditions at the time the impression was taken.

Exhibit 1.6 bears several known impressions that are of good to very good quality for

comparison. The impression in the block marked 1.R. THUMB is consistent in pattern and ridge flow with the right sloping loop in Exhibit 1.4. The ridges and ridge details are very clear, and while the ridges do fade around the outer edges of the impression, this does not interfere with the analysis.

Due to the level of ridge clarity and detail, both of the known impressions in Exhibits 1.4 and 1.6 were determined to be of sufficient quality for comparison.

A side by side comparison was conducted to determine if the known impressions were made by the same finger. There is specific agreement between the impressions as to pattern and ridge flow. Upon comparing the individual ridges present in the impressions, several areas displayed ridge characteristics that are in the same unit relationship between the two impressions. These areas of agreement are represented in the chart and occur throughout the impressions. The first area (the lowest set of small circles) is to the left side of the impressions near the delta area. The enlarged area displays an ending ridge and a bifurcation. The second set of circles highlight the ridge to the left of the core. The ridge contains four bifurcations presented as two enclosures. The third set of circles display the top of the core and a bifurcation opening up and to the right in both impressions. The top set of circles are representative of an ending ridge and a downward opening bifurcation that are above the core. The selected ridge details described are a representative sample of the ridges and ridge details on which Mr. Woods' ultimate conclusion was based.

The evaluation of the impressions described above resulted in the determination that both of the impressions were made by the same individual. While the areas recorded on the remaining impressions – Exhibits 1.1 (I-205 Warrant of Removal/Deportation dated 4/27/05), 1.2 (I-205 Warrant of Removal/Deportation dated 6/21/01), 1.3 (I-205 Warrant of Removal/Deportation dated 8/7/98), 1.5 (I-205 Warrant of Deportation dated 11/29/94), 1.7 (FD-249 Fingerprint Card dated 2/20/01), and 1.8 (FD-249 Fingerprint Card dated 11/14/95) – are in some cases different fingers, the same procedure or methodology was followed in the Analysis, Comparison, and Evaluation of these Exhibits. All impressions contained areas of sufficient clarity and ridge detail to allow the ACE methodology to be followed. Exhibits 1.1, 1.2, and 1.3 all contain right

1  index fingerprint impressions.  The pattern, ridge flow, and ridge characteristics on those
2  impressions are consistent with each other, and consistent with the right index fingerprints
3  contained on Exhibits 1.6, 1.7, and 1.8.  For example, below the core of the impressions there is a
4  bifurcation present that opens to the left, travels a short distance and merges or joins the ridge
5  above.  Two ridges below the first bifurcation is a second bifurcation that also opens to the left.
6      Likewise, the right thumbprint contained on Exhibit 1.5 is consistent with the pattern,
7  ridge flow, and ridge characteristics on the right thumbprints contained on Exhibits 1.4, 1.6, 1.7,
8  and 1.8.  For example, the previously mentioned core, with the bifurcation that opens to the right
9  in the ridge immediately above the core, is present in all of the right thumb impressions.
10 Additionally the double enclosure in the ridge to the left of the core is also present in all of the
11 right thumb impressions.
12     Thus, based on these and other consistencies (as well as the corresponding lack of
13 unexplainable inconsistencies) among the fingerprint impressions, Mr. Woods concluded (and
14 Mr. Johnson verified) that all of the impressions were made by one and the same individual.

16 DATED: June 20, 2008                    Respectfully submitted,

17                                          JOSEPH P. RUSSONIELLO
                                            United States Attorney

19                                          _____/s/_____
                                            TRACIE L. BROWN
20                                          Assistant United States Attorney

GOVT'S SUPP. EXPERT NOTICE
CR 08-0272 SI                     5

# EXHIBIT A





FDL  08-04491